Form B20A(Official Form 20A)
12/1/10

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In Re: Salvatore Cipriano,                    Case No. 14-48527-mbm

        Debtor.                    Chapter 7

                                              Honorable Marci B. Mclvor

---

BANK OF MONTREAL

        Plaintiff,

v.                                    Adversary Proceeding No. 14-048527-MBM

SALVATORE CIPRIANO,

        Defendant.

---

## NOTICE OF DEFENDANT'S MOTION TO DISMISS

    <u>Salvatore Cipriano</u> has filed papers with the court to dismiss the adversary proceeding.

    **<u>Your rights may be affected.</u>  You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case.  (If you do not have an attorney, you may wish to consult one.)**

    If you do not want the court to dismiss the adversary proceeding, or if you want the court to consider your views on the motion within <u>21</u> days, you or your attorney must:

1.        File with the court a written response or an answer, explaining your position at:[1]

### United States Bankruptcy Court
211 W. Fort St.
Detroit, MI 48226

    If you mail your response to the court for filing, you must mail it early enough so the court will **receive** it on or before the date stated above. All attorneys are required to file pleadings electronically.

    You must also mail a copy to:

Erik C. Stein
Gallagher Sharp
211 W. Fort St, Ste 660
Detroit, MI 48226

Brandon Wilson
Howard and Howard Attorneys, PLLC
450 W. Fourth St.
Royal Oak, MI 48067

---

[1] Response or answer must comply with F. R. Civ. P. 8(b), (c) and (e)

Kenneth Nathan – Chapter 7 Trustee
Nathan Law, PLC
29100 Northwestern Hwy., Ste 310
Southfield, MI 48034

2.        If a response or answer is timely filed and served, the clerk will schedule a hearing on the motion and you will be served with a notice of the date, time and location of the hearing.

      **If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.**

Date: October 29, 2014

/s/ ERIK C. STEIN
GALLAGHER SHARP
By: ERIK C. STEIN (P72172)
Attorneys for Defendant Salvatore Cipriano
211 W. Fort St, Ste 660
Detroit, MI 48226
(313) 962-9166
estein@gallaghersharp.com

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In Re: Salvatore Cipriano,                    Case No. 14-48527-mbm

             Debtor.                          Chapter 7

                                              Honorable Marci B. Melvor

---

BANK OF MONTREAL

             Plaintiff,

v.                                            Adversary Proceeding No. 14-048527-MBM

SALVATORE CIPRIANO,

             Defendant.

---

Brandon J. Wilson (P73042)          Erik C. Stein (P72172)
Howard & Howard Attorneys, PLLC     Gallagher Sharp
Attorneys for Bank of Montreal      Attorneys for Debtor Salvatore
450 W. Fourth St.                   Cipriano
Royal Oak, MI 48067                 211 W. Fort St., Ste 660
(248) 723-03411                     Detroit, MI 48226
                                    (313) 962-9165
                                    estein@gallaghersharp.com

## SALVATORE CIPRIANO'S MOTION TO DISMISS CLAIMS UNDER FRCP 12(B)(6)

Defendant Salvatore Cipriano (hereinafter "Defendant"), by and through his

attorneys, Linnell & Associates, PLLC, hereby moves the Court to dismiss the Complaint

1

pursuant to Fed. R. Bank. Proc. 7012, Fed R. Civ. P 12(b)(6) and submits the following Memorandum of Law in Support of Motion.

Pursuant to Local Bankruptcy Rule 9014-1(g), concurrence regarding this motion was sought and denied from counsel for Bank of Montreal on October 28, 2014.

Dated: October 29, 2014                          GALLGHER SHARP

                                                 /s/ ERIK C. STEIN
                                                 By: ERIK C. STEIN (P72172)
                                                 Attorneys for Defendant Salvatore
                                                 Cipriano
                                                 211 W. Fort St., Ste 660
                                                 Detroit, MI 48226
                                                 (313) 962-9165
                                                 estein@gallaghersharp.com

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

## TABLE OF CONTENTS

ISSUES PRESENTED.................................................................................................... 3

TABLE OF AUTHORITIES ......................................................................................... 3

STATEMENT OF FACTS .............................................................................................. 4

STANDARD OF REVIEW ............................................................................................ 5

ANALYSIS...................................................................................................................... 6

   **I.   PLAINTIFF HAS FAILED TO SUFFICIENTLY PLEAD FRAUD UNDER 11 U.S.C. 523(A)(2)(a).** .............................................................................. **6**

   **II.  PLAINTIFF IS NOT THE PROPER PARTY TO ALLEGE EMBEZZLEMENT UNDER 11 U.S.C. 523(A)(4).** ................................... **8**

CONCLUSION................................................................................................................ 9

## ISSUES PRESENTED

I.   Whether Plaintiff has sufficiently plead fraud under 11 U.S.C. 523(A)(2)(a).

II.  Whether Plaintiff' is the proper party to allege a claim for embezzlement under 11 U.S.C. 523(A)(4).

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ....................................................................... 5

*Hebshi v. United States*, 13-10253, 2014 WL 1308848 (E.D. Mich. Mar. 31, 2014) ........ 5

3

*In re Choisnard*, 98 B.R. 37 (Bankr. N.D. Okla 1989).................................................... 8
*In re Wallace*, 840 F.2d 762 (10th Cir. 1988).................................................... 8
*Pham v. Baccan*. 178 B.R. 528 (M.D. Fla 1995) .............................................. 6

**Statutes**

11 U.S.C. § 523(A)(2)(a) ............................................................................... 6, 7
11 U.S.C. § 523(A)(4).................................................................................... 8

**Rules**

Fed R. Civ. P 12(b)(6)................................................................................ 2, 5
Fed. R. Bank. Proc. 7012 ........................................................................... 2, 5

## STATEMENT OF FACTS

Defendant Salvatore Cipriano ("Defendant") is an individual residing in the County of Wayne, State of Michigan. Plaintiff Bank of Montreal is a Canadian chartered bank with its principal place of business in Toronto, Ontario, Canada.

Defendant Salvatore Cipriano was president of Produce Buyers Company, Inc., a Michigan Limited Liability Company and Salvatore Cipriano Enterprises, Ltd., a Canadian company organized in Ontario, Canada. (Complaint 1). Plaintiff's Complaint is attached as EXHIBIT A.

On November 26, 2003, Salvatore Cipriano Enterprise, LTD received a line of credit from Bank of Montreal, with a maximum lending amount of $600,000.00. (Complaint 9). Salvatore Cipriano, Evelyn Cipriano, and Produce Buyers Co., Inc., guaranteed the Bank of Montreal loan. (Complaint 13, 15-16).

Plaintiff alleges that nearly seven years after the origination of the loan from June 2010 to June 2012, Mr. Cipriano withdrew funds from line of credit, deposited the funds

4

into Produce Buyers Company, Inc's account, and then withdrew those funds as personal payments to himself. (Complaint 17-19). A default was not entered on the loan until January 2013, nearly 10 years after its origination.

In 2013, Plaintiff filed suit against Mr. Cipriano and obtained a judgment from the Superior Court of Ontario in its favor. (Complaint 22-23). In April 2014, Plaintiff certified its Ontario judgment in the Wayne County Circuit Court. (Complaint 24).

On or about May 16, 2014, Defendant filed a voluntary petition under Chapter 13 of the Code. (Complaint 26). On June 12, 2014, Defendant filed a Notice to Convert Case from Chapter 13 to Chapter 7. (Complaint 27).

On September 29th, 2014, Plaintiff filed the instant adversary proceeding against Defendant.

## **STANDARD OF REVIEW**

A motion to dismiss for failure to state a claim is governed by Rule 12(b)(6) of the Federal Rules of Civil Procedure, and is made applicable to adversary proceedings by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure. A Rule 12(b)(6) motion tests whether a legally sufficient claim has been pleaded, and provides for dismissal if a plaintiff fails to state a claim upon which relief can be granted. To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief which is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court may consider the complaint as well as any documents referenced or

attached therein or central to the claim to be part of the pleadings. *Hebshi v. United States*, 13-10253, 2014 WL 1308848 (E.D. Mich. Mar. 31, 2014).

# ANALYSIS

## I. PLAINTIFF HAS FAILED TO SUFFICIENTLY PLEAD FRAUD UNDER 11 U.S.C. 523(A)(2)(a).

The Plaintiff has failed to sufficiently plead an action for fraud under 11 U.S.C. 523(A)(2)(a). Specifically, Plaintiff has failed to allege any facts that demonstrate that Mr. Cipriano obtained the loan with fraudulent intent. 11 U.S.C. 523(A)(2)(a) provides:

> (A) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debt from any debt –
>
> (2) for money, property, services, or an ***extension, renewal, or refinancing of credit***, to the extent obtained, by –
>
> > *(a)* False pretenses, a false representation, or actual fraud, ***other than a statement respecting the debtor's or an insider's financial condition.***

*Emphasis added*. Courts have long held that the creditor seeking to have their debt excepted from the debtor's Chapter 7 discharge under 11 U.S.C. 523 has the burden of proof to establish their claim by a preponderance of evidence. *Pham v. Baccan*. 178 B.R. 528 (M.D. Fla 1995). The Plaintiff creditor must also establish (1) that the Debtor/Defendant knowingly made a false statement to the creditor with the intention of the creditor relying upon it; (2) the creditor reasonably relied upon the statement; (3) and the creditor sustained a loss as a result of its reliance." *Id.* In essence, a claim under 11 U.S.C. 523(A)(2)(a) relates to the application for credit. *Id.*

In *Pham*, the creditor contended that the debtor obtained money and the use of her credit cards through false pretenses and fraud and that therefore, the money owed to her by the debtor should be excepted from the general discharge. *Id.* The Middle District of Florida stated stated that the record was totally void of any documentary evidence which would establish that the alleged representations made to the creditor by the debtor induced the lending of the money. *Id.*

In the instant case, Plaintiff has similarly failed to allege any facts in its Complaint that Defendant made false statements in order to induce Plaintiff to extend the loan in question. Plaintiff alleges that a loan was made on November 23, 2011. Plaintiff also alleges that any wrongdoing on the part of Mr. Cipriano occurred nearly seven years later in 2010. Plaintiff alleges that the loan did not enter into default until 2013. Noticeably absent are any allegations that Mr. Cipriano obtained any credit other than the initial amount agreed to in 2003. Also absent are allegations that Mr. Cipriano, Produce Buyers Company, Inc. or Salvatore Cipriano Enterprise, Ltd knowing made false statements to Plaintiff for the purpose of obtaining credit.

Plaintiff will undoubtedly argue that it has alleged facts sufficent to demonstrate Mr. Cirpriano's fraudulent intent in 2003 when procurring the loan. Plaintiff will also point to paragrah 11 of its Complaint where it alleges that Defendant made false statements to induce Plaintiff in providing the loan. (Complaint 11). This argument is without merit. First, Plaintiff did not plead any specific facts sufficient to identify the specific statements made by Mr. Cipriano. Instead, Plaintiff has made a general blanket assertion that wrongdoing occurred. Second, assuming that Plaintiff has made specific enough allegations, Plaintiff's Complaint specifically provides that the false statements

were made with regard to "false or misleading financial documents." *Id.* Under the plain language of 11 U.S.C. 523(A)(2)(a), statements made with regard to the Debtor's or an insider of the Debtor's financial situation are excluded. Thus, the allegation, assuming it is truthful, is insufficient to demonstrate any facts required by 11 U.S.C. 523(A)(2)(a).

Accordingly, Plaintiff's Complaint, as it relates to 11 U.S.C. § 523(A)(2)(a) is wholly insufficient and must be dismissed with prejudice.

## II. PLAINTIFF IS NOT THE PROPER PARTY TO ALLEGE EMBEZZLEMENT UNDER 11 U.S.C. 523(A)(4).

Plaintiff is not the proper party for a claim of Embezzlement under 11 U.S.C. 523(A)(4) as Plaintiff did not directly provide funds to Mr. Cipriano under his care and control.

A claim for embezzlement, for the purposes of 11 U.S.C. § 523(A)(4), is determined by federal law. Embezzlement under 11 U.S.C. § 523(A)(4) is the fraudulent appropriation of property of another by one to whom such property has been entrusted or into whose hands it has lawfully come. *In re Wallace,* 840 F.2d 762 (10th Cir. 1988).

In *In re Choisnard*, the creditor in question had lent money to a corporation run by the Debtor as its principal and sole shareholder. *In re Choisnard*, 98 B.R. 37 (Bankr. N.D. Okla 1989). The debtor later filed for bankruptcy protection. *Id.* at 39. The creditor brought an adversary action against the debtor, seeking among other things, a judgment declaring its debt to be non-dischargeable as embezzled funds. *Id.* The Court rejected this argument, noting that the debtor had proper access to his corporate entity's funds, to which the creditor had provided the loan. *Id.* at 41. The Court concluded that the

corporate entity could allege the debt was embezzlement, but not the creditor because it was the corporation that trusted the funds to the debtor, not the creditor. *Id.* at 41.

Here, the allegations of Plaintiff are very similar. In its Complaint, Plaintiff alleges that Mr. Cipriano's actions constitute embezzlement. Plaintiff alleges that Mr. Cipirano withdrew funds from the line of credit, applied those funds to Produce Buyers Company, Inc. and then withdrew the funds for personal reasons. (Complaint 22-23). Plaintiff further alleges that these withdraws were not for business reasons because the funds ultimately ended up in the hands of Mr. Cipriano. (Complaint 23). Plaintiff does not allege, however, that the actual withdraw of the funds from the line of credit to Produce Buyers Company, Inc. was in anyway improper in and of itself. Similarly, the loan agreement attached to Plaintiff's Complaint does not provide any specific direction regarding the ultimate destination of the funds. (EXHIBIT A). Rather, the loan agreement provides that the funds are to be used for a "business purpose." *Id.* at 1. Assuming Plaintiff's allegations to be true, it is only Mr. Cipriano's withdraw of funds from Produce Buyers Company, Inc. that creates a cause of action. At that point, the funds belong to Produce Buyers Company, Inc. and not Plaintiff. As a result, only Produce Buyers Company, Inc. could make an sort of allegation against Mr. Cipriano.

Accordingly, Plaintiff's Complaint, as it relates to 11 U.S.C. 523(A)(2)(a) is wholly insufficient and must be dismissed with prejudice.

## **CONCLUSION**

In conclusion, Plaintiff has failed to provide any allegations which support its claims under 11 U.S.C. 523(A)(2)(a) or 11 U.S.C. 523(A)(4). As these are the only two causes of action alleged by Plaintiff, Plaintiff's complaint must be dismissed in its entirety with costs and attorneys fees awarded to Mr. Cipirano.

OCTOBER 29, 2014                                    GALLAGHER SHARP

                                                   /s/ ERIK C. STEIN
                                                   Attorneys for Defendant
                                                   211 W. Fort St., Ste 660
                                                   Detroit, MI 48226
                                                   (313) 962-9165
                                                   estein@gallaghersharp.com
                                                                              #
                                                   #        #
                                                                    #        #

         #

# U.S. Bankruptcy Court
## Eastern District of Michigan

In re:
**SALVATORE CIPRIANO**
    Debtor

Bankruptcy Case No. 14–48527–mbm

Bankruptcy Chapter 7

Adversary Proceeding No. 14–05022–mbm

**BANK OF MONTREAL**
    Plaintiff
    v.
**SALVATORE CIPRIANO**
    Defendant

### *SUMMONS IN AN ADVERSARY PROCEEDING*

**YOU ARE SUMMONED** and required to submit a motion or answer to complaint which is attached to this summons to the Clerk of the Bankruptcy Court within 30 days from the date of issuance of this summons, except that the United States and its offices and agencies shall submit a motion or answer to the complaint within 35 days of issuance.

| Address of Clerk |
|---|
| **Clerk, U.S. Bankruptcy Court** |
| **Eastern District of Michigan** |
| **211 West Fort Street** |
| **Detroit, Michigan 48226** |

At the same time, you must also serve a copy of the motion or answer upon the plaintiff's attorney.

| Name and Address of Plaintiff's Attorney |
|---|
| **Brandon John Wilson** |
| **450 West Fourth Street** |
| **Royal Oak, MI 48067** |

If you make a motion, your time to answer is governed by Federal Rule of Bankruptcy Procedure 7012.

**IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGEMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

**IF THE DEFENDANT IS A CORPORATION, OTHER THAN THE DEBTOR OR A GOVERNMENT UNIT, NOTICE IS HEREBY GIVEN THAT PURSUANT TO FED.R.BANK.P.7007.1, THE DEFENDANT/CORPORATION IS REQUIRED TO FILE TWO COPIES OF A CORPORATE OWNERSHIP STATEMENT ON A FORM AVAILABLE FROM THE CLERK. [See www.mieb.uscourts.gov]**

Date Issued:

9/29/2014



**/S/**

*Katherine B. Gullo, Clerk Of Court*
*United States Bankruptcy Court*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

SALVATORE CIPRIANO,

     Debtor.

_____/

BANK OF MONTREAL,

     Plaintiff,

vs.

SALVATORE CIPRIANO,

     Defendant.

_____/

Case No. 14-48527-mbm
Hon. Marci B. McIvor
Chapter 7

Adversary Case No.

## CERTIFICATE OF SERVICE

    I, Brandon J. Wilson, hereby certify that on September 29, 2014 I filed the complaint in the above-referenced adversary proceeding (with Exhibits A-D) using the Court's electronic filing system which automatically serves notice of said filing and a copy of the filed items upon all ECF-participants in the above-referenced bankruptcy case.

    On September 30, 2014, I caused the summons and complaint (with Exhibits A-D) in the above-referenced adversary proceeding to be served via first class mail, postage prepaid, upon:

| | |
|---|---|
| Salvatore Cipriano | Erik C. Stein, Esq. |
| 17220 St. Paul | 2804 Orchard Lake Rd., Ste. 203 |
| Grosse Pointe 48230 | Keego Harbor, MI 48320 |

1

2696841v1

Respectfully submitted,

HOWARD & HOWARD ATTORNEYS PLLC

Dated: September 30, 2014

By:/s/ Brandon J. Wilson
    Brandon J. Wilson (P73042)
    Attorneys for Plaintiff, Bank of Montreal
    450 W. Fourth Street
    Royal Oak, MI 48067
    bjw@h2law.com
    (248) 723-0341

2696841v1

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                          Case No. 14-48527-mbm
                                                Hon. Marci B. McIvor
SALVATORE CIPRIANO,                             Chapter 7

     Debtor.

_____/

BANK OF MONTREAL,

     Plaintiff,

                                     Adversary Case No.
vs.

SALVATORE CIPRIANO,

     Defendant.

_____/

## COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBT PURSUANT TO 11 § U.S.C. 523

Plaintiff, Bank of Montreal, by and through its counsel, Howard & Howard Attorneys PLLC, respectfully sets forth its Complaint to Determine Non-Dischargeability of Debt of Defendant and Debtor, Salvatore Cipriano, as follows:

### THE PARTIES

1.     Plaintiff, Bank of Montreal ("BMO") is a Canadian chartered bank with its principal place of business in Toronto, Ontario, Canada.

2.     Defendant, Salvatore Cipriano ("Cipriano"), is an individual residing in Grosse Pointe, Michigan.

3.     Cipriano is the named debtor in Chapter 7 Case No. 14-48527-mbm.

## VENUE AND JURISDICTION

4.     Venue is proper in this district pursuant to 28 U.S.C. § 1409.

5.     This adversary proceeding constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) over which this Court has jurisdiction pursuant to 28 U.S.C. § 1334.

## GENERAL ALLEGATIONS

6.     Cipriano was, at all relevant times, the sole shareholder and President of Salvatore Cipriano Enterprises Ltd. ("SCE").

7.     SCE is a Canadian corporation that was engaged in the sale of wholesale produce in Ontario, Canada.

8.     Cipriano was also the sole shareholder and President of Produce Buyers Co. ("PBC"), a Michigan corporation, engaged in the sale of produce primarily to SCE.

9.     On November 26, 2003, BMO made an operating loan to SCE in the principal amount of $600,000.00 (the "Operating Loan").

10.    The Operating Loan was to be secured, in part, by SCE's accounts receivable.

11.    Upon information and belief, to induce BMO to make the Operating Loan to SCE and to keep the Operating Loan from being in default, Cipriano, as President of SCE, provided BMO false or misleading financial documents which included false or fake receivables. BMO's investigation continues and it reserves the right to amend its complaint accordingly.

12.    The Operating Loan was memorialized by a Loan Agreement (the "Loan Agreement") between BMO and SCE. *See* Ex. A – Loan Agreement.

13.    The Loan Agreement was executed by Cipriano in his capacity as President of SCE.

14.     Under the Loan Agreement, SCE agreed that all advances would be used for business purposes only. *See* Ex. A at p. 1.

15.     Also on November 26, 2003, Cipriano executed a personal guaranty (the "Guaranty"), under which he fully and unconditionally guaranteed payment of all amounts owed by SCE to BMO under the Loan Agreement. *See* Ex. B – Guaranty.

16.     Cipriano's wife, Evelyn Cipriano, and PBC also guaranteed the amounts owed by SCE to BMO under the Loan Agreement.

17.     Cipriano subsequently used the Operating Loan to take advances for his own personal use, in contravention of the terms of the Loan Agreement.

18.     To avoid detection by BMO, and to avoid causing a default under the Loan Agreement, Cipriano withdrew funds against the Operating Loan account at BMO, deposited those monies into PBC's account at Huntington Bank in the United States, and wrote checks from PBC's account made payable to himself.

19.     From 2010 to 2012 alone, Cipriano paid himself hundreds of thousands of dollars from the Operating Loan at a time when he owed BMO in excess of $500,000 and when he knew SCE had no intention or ability to re-pay the Operating Loan.

20.     Had BMO known that Cipriano was using the Operating Loan for personal use, BMO would have terminated the Operating Loan and required SCE to pay the balance immediately.

21.     In or around January 2013, SCE defaulted on its obligations under the Loan Agreement and abruptly ceased its business operations. PBC also ceased conducting business.

22.     On February 8, 2013, BMO filed suit against SCE, Cipriano, Evelyn Cipriano and PBC in the Ontario Superior Court of Justice seeking a judgment for the outstanding principal of

$606,337.52 owing under the Loan Agreement and Guaranty, in addition to interest in the amount then-owing of $3,798.73.

23. On July 9, 2013, the Ontario Superior Court of Justice entered judgment (the "Canadian Judgment") against SCE, Cipriano, Evelyn Cipriano and PBC, and in favor of BMO, in the amount of $637,322.96, in addition to costs in the amount of $3,500. *See* Ex. C – Canadian Judgment.

24. On July 23, 2013, BMO filed suit in Wayne County Circuit Court seeking recognition of a Canadian Judgment entered against SCE, Cipriano, PBC and Evelyn Cipriano.

25. On April 11, 2014, the Wayne County Circuit Court entered judgment against SCE, Cipriano, PBC and Evelyn Cipriano and in favor of BMO in the amount of $652,241.80. *See* Ex. D – Judgment.

26. On May 16, 2014, Cipriano filed a Voluntary Petition under Chapter 13 of the Bankruptcy Code.

27. On June 12, 2014, Cipriano filed a notice to voluntarily convert his case from Chapter 13 to Chapter 7.

**COUNT I: NON-DISCHARGEABILITY PURSUANT TO 11 U.S.C. § 523(a)(2)(A)**

28. BMO repeats, realleges and incorporates the preceding allegations as though fully set forth herein.

29. Pursuant to 11 U.S.C. § 523(a)(2)(A), a discharge does not discharge an individual debtor of any debts for money, property, services or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud.

30. Cipriano used the Operating Loan for his personal use.

31.    To avoid detection by BMO, and to avoid causing a default under the Loan Agreement, Cipriano withdrew funds against the Operating Loan account at BMO, deposited those monies into PBC's account at Huntington Bank in the United States, and wrote checks from PBC's account made payable to himself.

32.    Cipriano's actions, in utilizing the Operating Loan for his personal use contrary to the express terms of the Loan Agreement, and at a time when Cipriano knew SCE had no intention, or was incapable, of re-paying the Operating Loan, constitutes an act to obtain money or an extension of credit from BMO by false pretenses, a false representation or actual fraud, pursuant to 11 U.S.C. § 523(a)(2)(A).

33.    As a direct result of the acts of Cipriano, BMO has suffered economic loss in the amount of $652,241.80.

34.    Cipriano's actions as set forth above render the debt owing to BMO non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), in the amount of $652,241.80.

WHEREFORE, Plaintiff, Bank of Montreal, respectfully requests that this Court enter a judgment in its favor and against Defendant, Salvatore Cipriano determining that all amounts owing by Cipriano to BMO are non-dischargeable pursuant to 11 U.S.C.§ 523(a)(2)(A).  BMO also prays for costs, interest, attorney fees, and such other and further relief as this Court deems proper.

## COUNT II: NON-DISCHARGEABILITY PURSUANT TO 11 U.S.C. § 523(a)(4)

35.    BMO repeats, realleges and incorporates the preceding allegations as though fully set forth herein.

36.    Pursuant to 11 U.S.C. § 523(a)(4), a discharge does not discharge an individual debtor from any debts for embezzlement.

37.     Cipriano was the sole shareholder and President of SCE.

38.     In his capacity as President of SCE, Cipriano had access to and signing authority on the Operating Loan account at BMO.

39.     Cipriano used the Operating Loan for his personal use.

40.     To avoid detection by BMO, and to avoid causing a default under the Loan Agreement, Cipriano withdrew funds against the Operating Loan account at BMO, deposited those monies into PBC's account at Huntington Bank in the United States, and wrote checks from PBC's account made payable to himself.

41.     Cipriano's fraudulent and deceptive actions, in utilizing the Operating Loan for his personal use contrary to the express terms of the Loan Agreement, constitutes embezzlement, pursuant to 11 U.S.C. § 523(a)(4).

42.     As a direct result of the acts of Cipriano, BMO has suffered economic loss in the amount of $652,241.80.

43.     Cipriano's actions as set forth above render the debt owing to BMO non-dischargeable pursuant to 11 U.S.C. § 523(a)(4), in the amount of $652,241.80.

WHEREFORE, Plaintiff, Bank of Montreal, respectfully requests that this Court enter a judgment in its favor and against Defendant, Salvatore Cipriano determining that all amounts owing by Cipriano to BMO are non-dischargeable pursuant to 11 U.S.C.§ 523(a)(4).  BMO also prays for costs, interest, attorney fees, and such other and further relief as this Court deems proper.

Respectfully submitted,

HOWARD & HOWARD ATTORNEYS PLLC

Dated: September 29, 2014    By:/s/ Brandon J. Wilson
                                      Brandon J. Wilson (P73042)
                                      Attorneys for Plaintiff, Bank of Montreal
                                      450 W. Fourth Street
                                      Royal Oak, MI 48067
                                      bjw@h2law.com
                                      (248) 723-0341


Bank of Montreal

To: Bank of Montreal

| Branch of Account | Date |
|---|---|
| 2954 - University Mall Branch, Windsor, Ontario | November 26, 2003 |

     The undersigned hereby requests the Bank of Montreal (the "Bank") to provide a credit facility to the undersigned, subject to the following terms and conditions:

### 1. DEFINED TERMS

In this Agreement, unless the subject matter or context otherwise require:

1.01 "Account" shall mean Account No. 1022-279 at the branch designated above.

1.02 "Loan" shall mean at any time the aggregate of all amounts debited to the Account (including without limitation cheques, transfers, withdrawals, interest, costs, charges and fees) in excess of the aggregate of all amounts credited to the Account.

1.03 "Loan Limit" shall mean Six Hundred Thousand Canadian Dollars ($600,00.00) or such lesser amount as may be calculated by the Bank from time to time under the Lending Margin Calculation, if any, set out in the Addendum hereto.

1 04 "Loan Rate" shall mean a rate equal to the Bank's Prime Rate plus One and One Half per cent (1.50%) per annum.

1.05 "Prime Rate" shall mean the floating annual rate of interest established from time to time by the Bank as the base rate it will use to determine the rate of interest payable to the Bank by borrowers from the Bank in Canadian dollars in Canada and designated by the Bank as its Prime Rate. The Prime Rate on the date hereof is _4.50_ per cent (_4.50_%) per annum. FOUR + ONE HALF

1.06 "Overdraft Rate" shall mean the annual rate of interest established from time to time by the Bank as the interest rate it will use to calculate the interest payable on overdrawn accounts and designated by the Bank as the "Overdraft Rate". The Overdraft Rate on the date hereof is Twenty One per cent (21%) per annum.

1 07 "Facility Fee" shall mean a fixed monthly fee of $150.00 .

### 2. ACCOUNT

2.01 The undersigned may from time to time draw cheques on the Account, subject to the terms hereof.

2.02 The undersigned shall not at any time permit the Loan to exceed the Loan Limit and shall use the Account for business purposes only.

2.03 The Bank is authorized to debit the Account for all fees and interest required hereunder and for all costs, charges and expenses referred to in paragraph 7.01.

### 3. FACILITY FEE

3.01 The undersigned shall pay the Facility Fee to the Bank on the last day of each month, in addition to all other fees applicable to the Account. The Facility Fee shall be payable for the credit facility provided hereunder and other standard reporting services provided by the Bank in connection with the Account.

### 4. INTEREST

4.01 The undersigned shall, both before and after demand or judgment, pay interest at the Loan Rate on the daily closing balance of the Loan up to the Loan Limit, such interest to be calculated and payable monthly on the last day of each month.

4.02 The undersigned shall, both before and after demand or judgment, pay interest at the Overdraft Rate on the amount of any

daily closing balance of the Loan in excess of the Loan Limit, such interest to be calculated and payable monthly on the last day of each month, but nothing herein shall oblige the Bank to permit the Loan to exceed the Loan Limit.

## 5. DEMAND AND TERMINATION

5.01 The undersigned shall pay the Loan to the Bank ON DEMAND. The Bank may at any time terminate the credit facility provided hereunder and demand payment of the Loan by notice as herein provided.

5.02 THE BANK MAY REFUSE TO HONOUR ANY CHEQUE OR PERMIT ANY TRANSFER OR WITHDRAWAL FROM THE ACCOUNT UPON (A) ANY FAILURE OF THE UNDERSIGNED TO PERFORM OR SATISFY ANY TERM OR CONDITION HEREOF, (B) ANY DEFAULT BY THE UNDERSIGNED IN THE PERFORMANCE OF ANY OBLIGATION OF THE UNDERSIGNED TO THE BANK WHETHER CONTAINED HEREIN OR OTHERWISE, OR (C) ANY DEMAND FOR PAYMENT OF THE LOAN, WHETHER OR NOT ANY TIME PERIOD HAS LAPSED AFTER THE TIME OF THE DEMAND.

## 6. DOCUMENTATION

6.01 The undersigned shall deliver to the Bank from time to time, promptly on request. in form and substance satisfactory to the Bank:

(a) any security required by the Bank; and

(b) all other documents and information required by the Bank including, if applicable, all documentation and information listed in the Addendum.

6.02 Any security document delivered hereunder shall be held as additional security for the indebtedness of the undersigned for the Loan, and not in substitution or in satisfaction thereof.

6.03 The Bank's statement for the Account at any time shall constitute prima facie evidence of the Loan.

## 7. COSTS

7.01 The undersigned shall pay all reasonable costs, charges and expenses incurred by the Bank in the preparation or enforcement of this Agreement or any security required hereunder.

## 8. NOTICES

8.01 The Bank shall not be required to notify the undersigned of changes to the Prime Rate or the Overdraft Rate or in the Bank's calculations of the Lending Margin Calculation, if any.

8.02 Any request for any document or information, notice of termination, demand for payment or other notice to be sent by the Bank to the undersigned in connection with this Agreement or the Account may be delivered to the undersigned (or any one of them, if more than one), or mailed by prepaid ordinary mail to the undersigned (or any one of them, if more than one) at the last known address for the undersigned (or any one of them, if more than one) in the Bank's records, and the undersigned shall be deemed to have received such request or notice on the date of delivery, if delivered, and four (4) days after mailing, if mailed.

## 9. GENERAL

9.01 The provisions of the Addendum, if any, shall be incorporated into this Agreement and form part hereof.

9.02 This Agreement shall be binding upon the undersigned and the respective executors, administrators, successors and assigns of the undersigned, but the undersigned shall not assign any of the rights or obligations of the undersigned hereunder without the prior written consent of the Bank.

9.03 The failure of either the undersigned or the Bank to require performance by the other of any provision hereof shall in no

Prod. 2246047 – Form. LF 320 (7/97) Litho. CANADA                    Page 2 of 4

14-05022-mbm    Doc 54-1    Filed 10/29/14    Entered 10/29/14 17:44:46    Page 24 of 32

way affect the right thereafter to enforce such provision; nor shall the waiver by either party of any breach of any covenant, condition or proviso of this Agreement or any other agreement between the Bank and the undersigned be taken or held to be a waiver of any further breach of the same covenant, condition or proviso.

9.04 This Agreement shall be in addition to and not in substitution for any other agreement between the undersigned and the Bank.

9.05 The undersigned will execute the Bank's standard form of Operation of Account Agreement or appropriate form of current account authority for the purposes of the Account. Without limiting the generality of the foregoing, the undersigned agrees that the balance shown in any statement of the Account provided to the undersigned shall be deemed to be a correct and accurate statement of the Loan as at the date of the statement, unless the undersigned has notified the Bank of errors, irregularities or omissions within the thirty day period specified in the Operation of Account Agreement or the current account authority.

9.06 Time shall be of the essence of this Agreement.

9.07 If more than one person signs this Agreement, the obligations of the undersigned are joint and several and the Bank is authorized to honour any cheque drawn on the Account or pay any withdrawal from the Account to create or increase the Loan if any such cheque or withdrawal request is signed by one of the undersigned.

9.08 It is the express wish of the parties that this Agreement and any related documents be drawn up and executed in English.
Applicable to Province of Quebec only.
Les parties conviennent que la présente convention et tous les documents s'y rattachant soient rédigés et signés en anglais.

Salvatore Cipriano Enterprises Ltd.

Per: _____

Per: _____
I/We have authority to bind the Corporation

(To be signed by Account Holders(s), or by authorized signing officer(s) in the case of corporations, societies, lodges, etc. In the case of corporations affix seal where applicable. Please type name of signatories below signature(s).)

Prod. 2246047 – Form. LF 320 (7/97) Litho. CANADA
Page 3 of 4

14-05022-mbm    Doc 54-1    Filed 10/29/14    Entered 10/29/14 17:44:46    Page 25 of 32

# ADDENDUM TO THE FIRSTBANK LENDING AGREEMENT

**Lending Margin Calculation**

The following Lending Margin Calculation is applicable to the attached FirstBank Lending Agreement. The calculation and the amount of the Lending Margin Calculation is in the sole and complete discretion of the Bank, and in cases of dispute, the Lending Margin Calculation calculated by the Bank shall prevail.

The Lending Margin Calculation shall be an amount equal to:

Operating advances must at all times remain within 75% of good quality Canadian Accounts Receivable less accounts greater than 60 days past due, inter-company accounts, accounts in dispute, holdbacks and offsets.

**Documentation**

Signed, aged month end listings of Accounts Receivable and Accounts Payable to be provided to the Bank by the 25th day of the following month.

Prod. 2246047 – Form. LF 320 (7/97) Litho. CANADA

Page 4 of 4

14-05022-mbm    Doc 5-1    Filed 10/29/14    Entered 10/29/14 17:44:46    Page 26 of 32

**Bank of Montreal**                    Guarantee for Indebtedness of an Incorporated Company

To the BANK OF MONTREAL:

IN CONSIDERATION of the Bank of Montreal (hereinafter the 'Bank') dealing with Salvatore Cipriano Enterprises Ltd. herein referred to as the Customer, the undersigned hereby jointly and severally guarantee(s) payment to the Bank of all present and future debts and liabilities direct or indirect or otherwise, now or at any time and from time to time hereafter due or owing to the Bank from or by the Customer or by any successor corporation of the Customer and whether incurred by the Customer alone or jointly with any other corporation, person or persons, or otherwise howsoever, provided, however, that the liability of the undersigned and of each of the undersigned herein is limited to Six Hundred Thousand Canadian Dollars $600,000.00 with interest thereon at a rate of 1.50 per cent per annum above the Bank's prime interest rate in effect from time to time, from date of demand for payment of same. The term "prime interest rate" means the floating annual rate of interest established from time to time by the Bank as the base rate it will use to determine rates of interest on Canadian dollar loans to customers in Canada and designated as Prime Rate.

IT IS AGREED that no change in the name, objects, capital stock or constitution of the Customer, shall in any way affect the liability of the undersigned or any of them, either with respect to transactions occurring before or after any such change, and the Bank shall not be concerned to see or inquire into the powers of the Customer or any of its directors or other agents, acting or purporting to act on its behalf, and moneys, advances, renewals or credits, in fact borrowed or obtained from the Bank in professed exercise of such powers shall be deemed to form part of the debts and liabilities hereby guaranteed, notwithstanding that such borrowing or obtaining of moneys, advances, renewals or credits shall be in excess of the powers of the Customer or of its directors or other agents aforesaid, or be in any way irregular, defective or informal. If the Customer shall amalgamate with one or more other corporations, this guarantee shall continue and apply to all debts and liabilities owing to the Bank by the corporation continuing from the amalgamation.

IT IS FURTHER AGREED that the Bank, without consent of the undersigned and without exonerating in whole or in part the undersigned, or any of them (if more than one), may grant time, renewals, extensions, indulgences, releases and discharges to, may take securities from and give the same and any or all existing securities up to, may abstain from taking securities from, or from perfecting securities of, may accept compositions from, and may otherwise change the terms of any of the debts and liabilities hereby guaranteed and otherwise deal with the Customer and all other persons (including the undersigned, or any one of them, and any other guarantor) and securities, as the Bank may see fit, and that all dividends, compositions, and moneys received by the Bank from the Customer from any other persons or estates capable of being applied by the Bank in reduction of the debts and liabilities hereby guaranteed, shall be regarded for all purposes as payments in gross, and the Bank shall be entitled to prove against the estate of the Customer upon any insolvency or winding-up in respect of the whole of said debts and liabilities, and the undersigned shall have no right to be subrogated to the Bank in respect of any such proof until the Bank shall have received from such estate payment in full of its claim with interest.

AND IT IS FURTHER AGREED that this shall be a continuing guarantee, and shall cover and secure any ultimate balance owing to the Bank, including all costs, charges and expenses which the Bank may incur in enforcing or obtaining payment of the sums of money due to the Bank from the Customer either alone or in conjunction with any other corporation, person or persons, or otherwise howsoever, or attempting to do so. The Bank shall not be obliged to seek any recourse against the Customer or other persons or the securities it may hold before being entitled to payment from the undersigned of all and every debts and liabilities hereby guaranteed. The undersigned and each of them (if more than one) hereby renounces the benefits of discussion and division. The undersigned and each of them (if more than one) renounces to claim against, or set up against, the Bank any right which the undersigned or each of them (if more than one) may have to be subrogated in any of the rights, hypothecs, privileges and other security held from time to time by the Bank. The undersigned, or any one or more of them (if more than one), or the respective executors, administrators or legal representatives of any of the undersigned, may determine his or their further liability under this continuing guarantee by ninety days' notice in writing to be given to the Bank, and the liability hereunder of the undersigned and each of them (if more than one), and his or their respective executors, administrators and legal representatives shall continue until the expiration of ninety days after the giving of such notice, notwithstanding the death or insanity of any of the undersigned, and after the expiry of such notice the undersigned and each of them (if more than one), and his or their respective executors, administrators and legal representatives shall remain liable under the guarantee in respect of any sum or sums of money owing to the Bank as aforesaid on the date such notice expired and also in respect of any contingent or future liabilities incurred to or by the Bank on or before such date maturing thereafter, but such determination in any manner of further liability of any one or more of the undersigned or of the respective executors, administrators or legal representatives of any of the undersigned shall not prevent the continuance of the liability hereunder of any others or other of the undersigned or of their or his respective executors, administrators, or legal representatives. If after such determination any payment from the Customer must be returned to the Customer, or any successor or representative of the Customer, for any reason (including the designation of such payment as a mistake or as a preference following the bankruptcy of the Customer), then this guarantee shall continue after the determination as if such payment has not been made. Every Certificate issued under the hand of the Manager or Acting Manager of the Bank for the time being at the Branch where the Customer's account shall be kept, purporting to show the amount at any particular time due and payable to the Bank, and covered by this guarantee, shall be received as conclusive evidence as against the undersigned and every one of them (if more than one), and his or their respective executors, administrators and legal representatives, that such amount is at such time so due and payable to the Bank and is covered hereby.

THIS CONTRACT shall be construed in accordance with the laws of the Province of Ontario and for the purpose of legal proceedings this contract shall be deemed to have been made in the said Province and to be performed there, and the Courts of that Province shall have jurisdiction over all disputes which may arise under this contract, provided always that nothing herein contained shall prevent the Bank from proceeding at its election against the undersigned in the Courts of any other Province or country.

NOTWITHSTANDING the provisions of any Statute relating to the rate of interest payable by debtors, this contract shall remain in full force and effect whatever the rate of interest received or demanded by the Bank.

ALL DEBTS AND LIABILITIES present and future of the Customer to the undersigned and each of them are hereby postponed to the debts and liabilities of the Customer to the Bank and all moneys received by any of the undersigned or their or his assigns thereon shall be received as Trustees for the Bank and shall be paid over to the Bank.

Prod. 2210001 - Form LF 44 Can. (1/99)                    Page 1 of 2

THE UNDERSIGNED and each of them (if more than one) acknowledges that this Guarantee has been delivered free of any conditions and that no representations have been made to the undersigned or any of them (if more than one) affecting the liability of the undersigned or any of them (if more than one) under this Guarantee save as may be specifically embodied herein and agrees that this Guarantee is in addition to and not in substitution for any other Guarantees held or which may hereafter be held by said Bank. For greater certainty and without limiting the generality of the foregoing, the Guarantor agrees that this Guarantee is in addition to and not in substitution of the Guarantee(s) dated N/A, and N/A the amount(s) of $0.0 and $0.0. The present Guarantee shall remain in full force and effect until all debts and obligation hereby secured have been irrevocably and indefeasibly paid and released.

*This clause applies to the Province of Québec only.*

It is the express wish of the Parties that this agreement and any related documents be drawn up and executed in English. Les parties conviennent que la présente convention et tous les documents s'y rattachant solent rédigés et signés en anglais.

AS WITNESS the hands and seals of the undersigned, at Windsor, Ontario this ___26___ day of ___November___ 2003 (year).

| WITNESS | SIGNATURE OF GUARANTOR |
|---|---|
| *If executed by a company with a corporate seal, the corporate seal should be affixed.* | |
| | Salvatore Cipriano |
| KAREN A. DEFOUR | Evelyn Cipriano |

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**

THE HONOURABLE MADAM )     TUESDAY, THE 9TH DAY
)
JUSTICE LEITCH )     OF JULY, 2013

BETWEEN

BANK OF MONTREAL

Plaintiff

- and -

SALVATORE CIPRIANO ENTERPRISES LTD., SALVATORE CIPRIANO,
EVELYN CIPRIANO and PRODUCE BUYERS CO.

Defendants

**ORDER**

**THIS MOTION** made by the plaintiff for summary judgment was heard this day at the Court House, 80 Dundas Street, London, Ontario.

**ON READING** the Motion Record of the plaintiff, including the Affidavit of Dave Coutts sworn June 20, 2013, and on hearing the submissions of counsel for the plaintiff, on being advised that the defendants Salvatore Cipriano and Evelyn Cipriano do not oppose the motion and the defendants, Salvatore Cipriano Enterprises Ltd. and Produce Buyers Co. having been noted in default,

1. **THIS COURT ORDERS** that the plaintiff be and is hereby granted summary judgment and that the defendants shall pay to the plaintiff the sum of $637,322.96.

2. **THIS COURT ORDERS** that the defendants shall pay to the plaintiff costs of this action, including this motion for summary judgment, fixed in the amount of $ ~~7500~~ $3500 including HST.

THIS ORDER bears interest at the rate of 3% per annum from its date.

ORDER ENTERED
77-72

JUL - 9 2013

1176

_____
Justice
Ontario Superior Court of Justice

9965087.1

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

Bank of Montreal,
a Canadian chartered bank,

    Plaintiff,

v.

Salvatore Cipriano Enterprises Ltd.,
a Canadian corporation;
Salvatore Cipriano, an individual;
Evelyn Cipriano, an individual; and
Produce Buyers Co., a Michigan corporation

    Defendants.

Case No. 13-009648-CZ
Hon. Judge John A. Murphy

13-009648-CZ

FILED IN MY OFFICE
WAYNE COUNTY CLERK
4/11/2014 4:19:05 PM
CATHY M. GARRETT

/s/ Katrina Ross

---

HOWARD & HOWARD ATTORNEYS PLLC
By: Michelle M. Wezner (P58671)
    La Toya N. McBean (P77092)
    Attorneys for Plaintiffs
    450 West Fourth Street
    Royal Oak, MI 48067
    (248) 645-1483 / Fax: (248) 645-1568
    Email: lmcbean@howardandhoward.com

LINNELL & ASSOCIATES
By: Richard D. Linnell (P59339)
Attorneys for Defendants
2804 Orchard Lake Road, Suite 203
Keego Harbor, MI 48320
(248) 977-4182 / Fax (248) 232-6179

---

## DEFAULT JUDGMENT (ORDER)

**At a session of said Court held in the Third Judicial
Circuit Court, City of Detroit, County of Wayne,
State of Michigan, on April 4/11/2014 , 2014**

### PRESENT: HONORABLE JOHN A. MURPHY, CIRCUIT JUDGE

This matter having come before the Court on March 14, 2014 on Plaintiff's, Bank of
Montreal ("BMO") Motion for Entry of Default Judgment against Defendants, Salvatore
Cipriano Enterprises Ltd., Salvatore Cipriano, Evelyn Cipriano, and Produce Buyers Co. (jointly
the "Defendants"), pursuant to MCR 2.603(B)(3), the Court having heard oral argument and
being otherwise fully advised, finds as follows:

1.　　On July 9, 2013, the Ontario Superior Court of Justice granted summary judgment to BMO against all Defendants, awarding BMO C$637,322.96, in addition to costs of C$3,500 against defendants Salvatore Cipriano Enterprises Ltd., Salvatore Cipriano, Evelyn Cipriano, and Produce Buyers Co.

2.　　The July 9, 2013 Order of summary judgment also provides that an interest rate of 3% shall be applied per annum from the date of the Order.

3.　　Pursuant to MCL 691.1134, "a court of this state shall recognize a foreign-country judgment to which this act applies."

4.　　BMO complied with this Court's September 24, 2013, Order for Alternative Service and filed a proof of service with the Court on or about December 26, 2013.

5.　　After Defendants failed to Answer or otherwise appear, a default was entered against Defendants and notice of default was sent to Defendants, which are not infants, incompetent persons, or in individuals in the military service.

6.　　Notice of BMO's request for default judgment has been served more than 7 days prior to the entry of default judgment.

**IT IS HEREBY ORDERED** that judgment is entered in favor of BMO in the amount of C$652, 241.80 jointly against Defendants; and

**IT IS FURTHER ORDERED** that this Court retains jurisdiction as to any disputes related to the collection of said judgment.

This resolves the last pending claim and closes the case.


4/11/2014

**Dated: April ____, 2014**

/s/ John A. Murphy
_____
**CIRCUIT JUDGE**

UNITED STATES BANKRUPTCY
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In Re:  SALVATORE CIPRIANO,                    Case No. 14-48527-mbm

Debtor                                          Chapter 7

                                                Hon. Marci B. McIvor

_____

BANK OF MONTREAL,

                Plaintiff,
                                                Adversary Case No. 14-05022-mbm
v.

SALVATORE CIPRIANO,

                Defendant.

_____

### CERTIFICATE OF SERVICE

I, Kimberly Werner, hereby certify that on October 29, 2014, I served a copy of

Defendant's Motion to Dismiss via ECF and first class mail, by placing said documents in the

U.S. Post Office receptacle with appropriate postage addressed to:


Brandon J. Wilson
Howard & Howard, PLLC
450 W. Fourth Street
Royal Oak, MI  48067

Kenneth Nathan-Chapter 7 Trustee
Nathan Law, PLC
29100 Northwestern Hwy., Ste 310
Southfield, MI  48034


Dated:  October 29, 2014                         /s/ KIMBERLY WERNER
                                                _____